**UNITED STATES v. CONSUMERS ICE CO. et al.**

**Cr. A. No. 12087.**

United States District Court
W. D. Louisiana.

May 13, 1949.

Malcolm E. LaFargue, U. S. Atty., Shreveport, La., for plaintiff.

Horace L. Flurry, Jacob M. Raey, Fred D. Turnage, Kansas City, Kan., S. W. Plauche, Jr., Lake Charles, La., for defendants.

DAWKINS, Chief Judge.

Defendants, Samuel Ross Morgan, and three corporations, Consumers Ice Company, Inc., called Consumers, Louisiana Ice Company, Inc., called Louisiana, and Morgan Vivian Ice Company, Inc., called Vivian, are charged in an indictment returned October 22, 1948, with violation of Sections 1 and 2 of Title 15 U.S.C.A., Anti-Trust Act. It is charged that Morgan, the individual, "within three years next preceding this indictment has been associated with or employed by defendant corporations, and controls, or within said three year period has controlled operations of defendant corporations. He has done and caused to be done within said three year period many of the acts hereafter alleged."

The indictment consists of two counts and in the first he and the corporations are charged with having agreed and conspired to restrain trade and commerce in the ice business, and (2) with monopolizing trade and commerce in the ice business within the areas described in the indictment.

All defendants, including Morgan, filed written pleas of not guilty, the latter with

reservation of the right to file a motion to dismiss. On the same day, January 19, 1949, Morgan filed a motion to dismiss on the grounds that he had been given immunity from prosecution because the Court had issued a subpoena duces tecum requiring him to produce before the grand jury, which returned the indictment, records and documents as set forth in Exhibit A, attached to said motion to dismiss, and that the "said records, data, and evidence were defendant's personal papers, in his possession and under his control in his status as manager and proprietor of his non-corporate business". The immunity was claimed under the 5th Amendment to the Constitution and Title 15, U.S.C.A. § 32, Act of February 25, 1903, C.755, § 1, 32 Stat. 904.

### Findings.

On October 11th, 1948 there was issued a subpoena to Morgan individually to appear before the grand jury at Monroe on the 18th of that month in the case of "U. S. vs. Genally".

On October 8th, 1948, the District Attorney presented to this Court and there was granted an application for writs of subpoenas duces tecum addressed "to the president and/or official of the Consumers Ice Co., Shreveport, La."; "to the president and/or official of the Louisiana Ice Co., Shreveport, La."; "to the president and/or official of Morgan Ice Industries, Inc., Shreveport, La."; and "to the president and/or official of Morgan Ice Co., Shreveport, La.", commanding them all to produce "before the grand jury * * * on Monday, October 18th, 1948 * * * all documents described, listed and set forth" in Exhibits B to E, both inclusive. The descriptions in each instance were identical and were made part of the subpoenas addressed to the officers of the corporation as follows:

"Exhibit B" was attached to Consumers, "Exhibit C" to Louisiana, "Exhibit D" to Morgan Industries, Inc. and "Exhibit E" to the subpoena addressed to Morgan Ice Co.

Returns on the subpoena duces tecum, addressed to Louisiana, showed three attempts were made to serve the same upon Charles Elkins, "secretary-treasurer, both at its place of business, 2465 Texas Avenue and at his residence", twice on October 12th and again on the 14th without success, and it was finally returned unexecuted on October 18th, 1948, the date on which the documents were ordered to be produced before the grand jury.

No service was made upon Morgan Ice Industries, Inc., and according to testimony of defendant, Morgan, there was and is no such corporation.

Service upon Morgan Ice Co. was made "through S. N. Morgan, upon instructions from the United States Attorney". Again according to Morgan, there was also no corporation by this name, but he and his wife carried on the activities hereinafter mentioned, under this appellation as a registered trade name.

The following is the list of the papers and documents called for as attached to each subpoena addressed to the several corporations:

"1. All invoices, records of accounts, bills of lading from railroads and other public concerns, and records of transportation by privately owned trucks or by contract holders on all ice shipped or transported from your ice plant or plants to a destination outside the State in which said plant or plants are located during 1947 and 1948.

"2. All correspondence, office memoranda and all minutes of meetings of the board of directors, and all minutes of the meetings of the stockholders during the period from January 1, 1942 to October 1, 1948, which refer to the following subject matter:

"a. The ownership of the stock in the corporation;

"b. To the election of directors and officers of the corporation;

"c. To the designation of the managers of the business operations of the corporation;

"d. To the acquirement of any ownership interest in, or operating control of, the business of any person, company or corporation engaged in the manufacture or sale and distribution of ice in the territory

in which you operated the manufacture, sale or distribution of ice on October 1, 1948.

"3. All price lists and records of prices of ice in effect by you during the years 1947 and 1948, including wholesale and retail prices at your plants or plant and on your distribution routes.

"4. All records of quantities of ice produced in each of your plants and the total sales from each of said plants during the years 1947 and 1948.

"Exhibit E."

Morgan appeared before the grand jury and the following is a transcription of what took place and his examination before that body:

"Testimony of Samuel Ross Morgan before Grand Jury Convened at Monroe, Louisiana, on October 18th, 1948.

"By Mr. Flurry:

"Q. Mr. Morgan, will you state your full name so that the reporter may take it down? A. Samuel Ross Morgan.

"Q. Where do you live? A. Shreveport, Louisiana.

"Q. What is your street address? A. 775 Thora Boulevard.

"Q. Did you receive a subpoena from the United States District Court to produce certain documents before the Grand Jury? A. I did.

"Q. Have you brought with you these documents? A. As far as I know, yes, sir.

"Q. Did that subpoena which you received call for all invoices, records of accounts, bills of lading from railroads and other public transportation concerns, and records of transportation by privately owned trucks or by contract haulers on all ice shipped or transported from your ice plant or plants to a destination outside the State in which said plant or plants are located, during 1947 and 1948? A. I think so, yes, sir.

"Q. Have you produced those records? A. I have, as far as I have been able to locate them. I might add, if I may, I have not been active in this clerical department and two of my clerical help had an accident immediately after this subpoena—one fell

and broke two or three ribs and I have been deprived of that help and still another is hospitalized and I have done the best I can. I have what you wish.

"Q. If you have any of those documents which have not been produced by you here this morning, where would those documents be located? A. They would be at 2465 Texas Avenue in Shreveport.

"Q. And who would be in charge of those clerical records? A. Well, I would. I am continuing with a young lady over there a further search for anything that would be further responsive. I think I have everything asked for.

"Q. Did you also bring all correspondence, office memoranda and all minutes of meetings of the Board of Directors, and all minutes of the meetings of the stockholders during the period from January 1, 1942 to October 1, 1948, which referred to the following subject matter: The ownership of the stock in the corporation? A. Well, I am sorry I have to tell you that those records are under subpoena duces tecum in the First Division, Circuit Court of Caddo Parish, but I can give it to you from memory.

"Q. What about the same documents relating to the election of directors and officers of the corporation? A. That is embodied in the minute book, of course, which is impounded.

"Q. The same documents with reference to the designation of the managers of the business operations of the corporation, would that also be incorporated? A. That would be in the corporate minutes.

"Q. And to the acquirement of any ownership interest in, or operating control of, the business of any person, company or corporation engaged in the manufacture or sale and distribution of ice in the territory in which you operated the manufacture, sale or distribution of ice on October 1, 1948? A. That is correspondence with reference to that?

"Q. Yes, correspondence, office memoranda and minutes of meetings. A. There has been nothing to that effect that I know of.

"Q. All price lists and records of prices of ice in effect by you during the years

1947 and 1948, including wholesale and retail prices at your plant or plants and on your distribution routes. A. Well, we only have two prices—

"Q. We are not asking you to testify, Mr. Morgan, unless you want to sign a waiver of immunity as to what transpired in your business. We are merely asking you for the corporation records. A. Well, I don't have any such records.

"Q. Do you have any records of quantities of ice produced in each of your plants and the total sales from each of said plants during the years 1947 and 1948? A. I do not have any plants.

"Q. Well, I meant the corporation, not you individually? A. Yes, those records are here.

"Q. The records which you have produced, Mr. Morgan, for the corporation, they are the records of the corporation made in the due course of business? A. That is correct.

"Q. That is all we wish to ask you, Mr. Morgan. We are not asking you to testify as to the operations, etc. We only want to identify the records. A. Does that mean I am excused?

"Q. Yes, but you may leave the records. Mr. Morgan, Mr. Plauche explained to me that your wife was over at the hotel and she was not feeling very well and we consented she remain over at her hotel room and in order to save her the embarrassment of service of a subpoena at the hotel Mr. Plauche said she would be glad to come over voluntarily. A. She is subject to your pleasure at any time.

"Q. I think we might as well let you bring her over and she can be excused when we are through with her. A. Yes, sir.

"Mr. Flurry: That is all. Thank you."

The documents produced before the grand jury are contained in a pasteboard box and consist of letter fileholders offered in the trial of this motion to dismiss and were numbered by defendant's counsel as mover's numbers 1, 3, 4, 5, 6, 7 and 9, together with a more or less unintelligible memorandum book marked Mover 8.

Exhibit No. 1 embraces some several separate folders, bearing the labels, "Vivian Ice Company, Daily Reports", from April to October 1948, both inclusive. They purport to show the ice produced and the disposition made of it each day of the month with deposit slips in the name of the Vivian Ice Company, issued by the Bank of Vivian, La.

Mover No. 3 consists of some four folders labelled "Daily reports, Morgan Ice Company, Longview, Texas", for the months of June to September, both inclusive, 1947, and are all of substantially the same character as those described as found in Mover No. 1.

Mover No. 4, labelled "Daily Reports—Morgan Ice Company, Dallas, Texas", for August and September, 1947 and consists of identical printed forms filled out as in the other two exhibits. However, there were no deposit slips attached to these forms as in the case of the Vivian Ice Co.

Mover No. 5 is a folder labelled "Independent Ice and Cold Storage Company, Mr. Walter B. Chandler, Shreveport" and contains carbon copies of two letters addressed to the said Chandler, dated respectively June 16th and July 16th, 1947, and samples of a letter head labeled "Morgan Ice Companies, Shreveport, Louisiana", with "S. R. Morgan" on the left hand margin, and a similar blank envelope.

Mover No. 6 bears the label "Fair Colvin, Shreveport" and consists of carbon copies of letters dealing with proposals for handling the ice of several dealers of ice in the Shreveport area.

Mover No. 7 is labelled "City Ice Service, Inc.,—Mr. Moss, Shreveport" and contains carbon copies of letters addressed to Mr. W. S. Moss, manager City Ice Service, Inc., and signed variously "Louisiana Ice Co., Consumers Ice Co., by S. R. Morgan" and "Consumers Ice Co., Louisiana Ice Co., Inc. by S. R. Morgan" and others also signed "S. R. Morgan."

Mover No. 9 contains a folder labelled "City Ice Service, Inc. * * * contract * * * Mr. Moss", another labelled "Texas and Pacific Rwy. Co.—Frt.—bills paid—1948," and a stock book marked "Consumers Ice Co., Shreveport", the latter indicating that three certificates were issued on October 31, 1947, as follows:

Certificate No. 1 to S. R. Morgan, Jr., "original issue", 126 shares, Certificate No. 2 to S. R. Morgan, Jr. for William Ellis Morgan IV, 123 shares, and Certificate No. 3, Mrs. Maude W. Morgan, for one share.

As stated above, there was also addressed to S. R. Morgan individually a subpoena to appear as a witness.

## Conclusions.

The transcript of Morgan's examination before the grand jury, as well as the subpoenas duces tecum addressed to the corporations, all show that the purpose was to inquire into the affairs of these corporations as the same bore upon the issue of whether there had been a violation of the anti-trust laws in the handling of ice in interstate commerce. No subpoena duces tecum was addressed to Morgan nor was his name as an officer in any of those directed to the corporations. Such papers as were brought before the grand jury were produced by Morgan, notwithstanding there was no effective service on the Louisiana Ice Co., Inc., and in response to a subpoena directed "to the president and/or official of Morgan's Ice Co., Shreveport, La. Morgan had made known to the server of the process that there was no corporation known as Morgan Ice Co., but under instructions from the U. S. Attorney service had been made upon Morgan in the manner stated, that is, upon "Morgan Ice Companies through S. R. Morgan".

If the statements of Morgan as a witness in the trial of this motion to dismiss are accepted, there were at least three corporations, to-wit: Louisiana Ice Co., Inc., Consumers Ice Co., Inc., and Morgan Vivian Ice Co., Inc., during the major portion of 1947 and all of 1948, a part of the period about which the grand jury was inquiring, and all their books and records were kept in the same office at 2465 Texas Avenue in the city of Shreveport, Louisiana. This defendant also testified that his son, S. R. Morgan, Jr. owned controlling interest in the Louisiana while this defendant's wife, Mrs. Maude W. Morgan, owned the major interest in the Consumers and Vivian, as well as one-half interest in all the earnings arising from a business carried on by Morgan individually in handling the output of the first of these corporations and in the operating of the other two under leases. In response to questions by the Court, however, Morgan admitted that, insofar as his wife was concerned, he actually made the decisions, operated and controlled all of these affairs of his wife in such manner as he saw fit. The files and documents produced show that he dealt indiscriminately with the affairs of the corporations in their or his name on all matters as he happened to choose at the particular instant. The result is that this and their affairs, if his testimony is to be accepted, are so badly mixed, it would be difficult to tell where his personal interests ended and corporate dealings began. Morgan claims to have leased each of the ice plants of Consumers and Morgan Vivian for the same price of $6,000 per year, notwithstanding the differences in their capacities; and their reports on employees for social security purposes, etc. were made in the names of the corporations. There is no question but that he and his family control all these three corporations, as well as operations of other plants at a number of smaller places both in Texas and Louisiana.

It is significant, as Morgan admitted, that there were no written contracts of leases or of agreements to take the output of any plant and to handle matters in the manner he claims was done under the trade name of "Morgan Ice Companies". Much of his testimony, both before the grand jury and on the trial of this motion, is mixed up and conflicts, as will be seen by careful examinations. The summons to him as a witness did not command him to produce anything, and it was particularly obvious from the subpoena duces tecum that the Government was asking for corporate records. If Morgan saw fit to mix up his personal affairs with those of the corporations and to produce his own papers along with theirs, especially in view of the warning that was given him when he appeared before the grand jury, he has no one to blame but himself and it is not believed that he can now claim

immunity in such circumstances. If this were permissible all that anyone would have to do in carrying on activities in violation of the anti-trust laws, would be to mix his personal affairs with those of the corporations, and when they were haled into court, voluntarily produce the whole in response to subpoenas addressed to them, and as to which he denies any official relationship, and thus plead the protection of the law, notwithstanding he might have been the one whose genius conceived and executed the entire scheme of law violation; and he would thus have the benefit of the corporate interests in all matters of responsibility for their illegal activities.

It is the view of this court that the motion to dismiss should be denied.

Proper decree should be presented.